1
2
3
4
5
6
7
8                                UNITED STATES DISTRICT COURT
9                           FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ALLEN HAMMLER,                              No.  2:14-cv-2073 MCE AC P

12                   Plaintiff,

13          v.                                    ORDER and

14   C. DAVIS, et al.,                            FINDINGS AND RECOMMENDATIONS

15                   Defendants.

16

17          I.       Introduction

18          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with this civil rights

19   action filed pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's First Amended

20   Complaint (FAC), against sole defendant C. Davis, a librarian at High Desert State Prison

21   (HDSP), on claims that defendant, acting in retaliation, was deliberately indifferent to plaintiff's

22   safety.  ECF No. 14.  This action is referred to the undersigned United States Magistrate Judge

23   pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).

24          Currently pending is defendant's motion (ECF No. 33) to dismiss this action on the

25   ground that plaintiff's claims are barred by application of res judicata.  Defendant seeks,

26   alternatively, the dismissal of plaintiff's claims for injunctive relief on the ground that they were

27   mooted by his transfer from HDSP.  Plaintiff filed an opposition to defendant's motion, ECF No.

28   39; defendant filed a reply, ECF No. 40.  Also pending is plaintiff's motion for appointment of

counsel.  ECF No. 42.

For the reasons set forth herein, the court recommends that defendant's motion to dismiss this action on res judicata grounds be denied, but that plaintiff's claims for injunctive relief be dismissed as moot; in addition, the court denies without prejudice plaintiff's motion for appointment of counsel.

II.     Background

Plaintiff filed his initial complaint in this action on August 29, 2014,[1] ECF No. 1, and the court dismissed the complaint with leave to amend.  ECF No. 9.  Plaintiff filed his FAC on January 17, 2015.  ECF No. 14.  Pursuant to screening the FAC under 28 U.S.C. §1915A, this court recounted plaintiff's allegations as follows, ECF No. 17 at 3 (internal citations omitted):

> Plaintiff's FAC refines the allegations of his original complaint as follows. Plaintiff names only one defendant, HDSP Librarian C. Davis, whom plaintiff alleges has taken the following action against plaintiff because he assists other inmates with their litigation: threatened to take away plaintiff's Preferred Legal User (PLU) status; denied plaintiff access to the library; obtained the cooperation of other prison officials to prevent plaintiff from accessing the library; and persuaded other inmates/gang members to warn plaintiff that he "need[s] to lay back off the lady [Davis] in the law library."  The FAC alleges that other inmates approached plaintiff with this message on at least two occasions, . . . the former resulting in physical injury to plaintiff ["herein plaintiff suffered a bloodied nose and was, during the altercation defendant instigated, shot with a 40mm gun projectile of which tore flesh from his left leg"].  Plaintiff alleges that on the latter date a "physical fight . . . was only avoided because plaintiff agreed to do as the two [inmates] were requesting . . . ."  Plaintiff avers that the alleged physical altercation also resulted in a disciplinary charge against him, and a housing move.  Plaintiff does not identify the relief he seeks, other than to state that "[p]laintiff reserves the right to seek punitive damages."  However, it is implied that plaintiff also seeks compensatory damages, access to HDSP's law library, and freedom from intimidation and physical injury by other inmates.

The court found that the FAC states claims for retaliation and deliberate indifference/ failure to protect against defendant Davis based on her alleged enlisting of other inmates to

---

[1]  Plaintiff's filings are accorded the benefit of the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

1   intimidate and/or harm plaintiff in response to his efforts to access the HDSP law library and

2   provide legal assistance to other inmates.  ECF No. 17 at 3.  The court found that the FAC does

3   not state a claim for denial of access to the courts because it does not allege that plaintiff suffered

4   any actual legal injury.  See id. at 3-7.  Therefore, plaintiff's allegations that defendant Davis

5   threatened to take away his PLU status, denied him access to the library, or obtained the

6   cooperation of other prison officials to limit his access to the library, do not state a claim for

7   relief.[2]  It is only defendant's alleged enlisting of other inmates to intimidate and/or injure

8   plaintiff that supports plaintiff's claims for retaliation and failure to protect.

9          Defendant now informs the court that, the day before plaintiff commenced the instant

10  action, he filed a related case against defendant Davis in the Lassen County Superior Court (Case

11  No. JC58661).  Defendant has provided a copy of plaintiff's complaint in his state court action,

12  filed by plaintiff on August 28, 2014, see n.1, supra, although file-stamped by that court on

13  October 1, 2014.  See ECF No. 33-2 at 5-11 (Df. Ex. A); see also ECF No. 39-1 at 12-8 (Pl. Ex.

14  A).  Defendant has also provided a copy of the state court's January 23, 2015 order sustaining

15  defendant Davis' demurrer without leave to amend.[3]  See ECF No. 33-2 at 13-4 (Df. Ex B).  In

16

_____

17  [2]  Moreover, these allegations appear only to reflect the exercise of defendant's authority to
    address the unacceptable behavior of inmates while in the library.  As provided by CDCR's
18  regulations, at Cal. Code Regs., tit. 15, § 3122(b)(7):

19              PLU status is intended to assist inmates to do legal work in a quiet
                law library setting. An inmate on PLU status who, while in the law
20              library, is observed by staff to act in an unreasonably disruptive
                manner or to engage in non-legal work shall be removed from the
21              PLU list and shall be dismissed from the library for that day.
                Inmates who are removed from the PLU list for these reasons shall
22              be ineligible to reapply for PLU status for 30 calendar days, but
                may continue to use the law library on GLU [General Legal User]
23              status.

24  See also id., § 3122(c): "Inmates may not in any way trade, transfer, or delegate their PLU status
    to other inmates.  An inmate who assists another inmate in the preparation of legal documents, as
25  described in section 3163, may not use the PLU status of the inmate being assisted."
    [3]  The sustaining of a demurrer may be construed as an adjudication on the merits for purposes of
26  res judicata.  See O'Connor v. Nationstar Mortgage, LLC, 2014 WL 1779338, at *8, 2014 U.S.
    Dist. LEXIS 62067, at *25 (N.D. Cal. May 5, 2014) (Case No. 13-cv-05874 NC), which further
27  provides, id.:
28  (continued...)

1    addition, plaintiff has provided a portion of defendant's motion in support of her demurrer in

2    plaintiff's state court action.  <u>See</u> ECF No. 39-1 at 20-1 (Pl. Ex. B).  The court takes judicial

3    notice of these documents. [4]

4          The form portion of plaintiff's state court complaint indicates that it was a limited civil

5    action for damages (seeking between $10,000 and $25,000) for personal injury based on an

6    intentional tort theory.  <u>See</u> ECF No. 33-2 at 5-7.  The body of the complaint sought

7    "compensatory, emotional and punitive damages" based on defendant's alleged promulgation of

8    "untrue defamatory statements going directly to Plaintiff's character and standing as a reputable

9    Activist and Lobbyist for Prisoner' Rights and Reform."  <u>Id.</u> at 8.  Plaintiff alleged that on April

10   4, 2010, defendant "attacked Plaintiff's character" when she made the following statements to

11   him while in the library and in the presence of other inmates, <u>id.</u> at 9-10:

12
13
14
15
16          [She] told me that she believed I was using the Library to "Drum up
            Business," because she'd heard about me charging large amounts of
            money to aid other Inmates/Prisoners.  I became embarrassed, and
            taking offense told her she was making "slanderous" allegations.
            "Shut up and sit down" I was told by Davis "before I take your
            PLU."  I did as I was told not wanting to risk such loss.  After the
            library session was over other prisoners questioned me as to why
            Davis would say such thing[s] or "why does she have it in for you."

17   _____

18          <u>See</u> <u>Brambila v. Wells Fargo Bank</u>, No. 12-cv-04224 NC, 2012
19          U.S. Dist. LEXIS 157203, 2012 WL 5383306, at *4-5 (N.D. Cal.
            Nov. 1, 2012) ("A judgment given after the sustaining of a general
20          demurrer on a ground of substance . . . may be deemed a judgment
            on the merits, and conclusive in a subsequent suit; and the same is
21          true where the demurrer sets up the failure of the facts alleged to
            establish a cause of action, and the same facts are pleaded in the
22          second action." (quoting <u>Goddard v. Security Title Insur. &</u>
            <u>Guarantee Co.</u>, 14 Cal. 2d 47, 52, 92 P.2d 804 (1937)); <u>Chavez v.</u>
23          <u>JPMorgan Chase Bank N.A.</u>, No. 13-cv-03844 LB, 2013 U.S. Dist.
            LEXIS 160617, 2013 WL 5978478, at *4 (N.D. Cal. Nov. 8, 2013)
24          (state court order sustaining demurrer to complaint without leave to
            amend and dismissing action constituted an adjudication on the
25          merits for purposes of res judicata).

26   [4]  This court may take judicial notice of court records.  <u>See</u> <u>United States v. Howard</u>, 381 F.3d
     873, 876 n.1 (9th Cir. 2004); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980); <u>see</u> <u>also</u>
27   Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate
     determination by sources whose accuracy cannot reasonably be questioned).

28

                                                4

In sustaining defendant's demurrer, the superior court ruled in pertinent part, id. at 13-4:

> [T]he court finds that Plaintiff's Verified Complaint does not state facts sufficient to constitute a cause of action against Davis for defamation.  The grounds for the finding are:  (1) considering the totality of the circumstances, the alleged statement of Davis is not defamatory; (2) the alleged statement of Davis is non-actionable opinion; and (3) Davis is immune from liability under Government Code section 820.4 and/or Civil Code section 47.
>
> . . . Additionally, the Court finds that these defects cannot be cured by amendment. . . .  [W]ith respect to the cause of action for defamation,[5] because any amendment would not alter the alleged statement of Davis, which forms the basis for Plaintiff's cause of action for defamation, any such amendment could not state facts sufficient to state a cause of action for defamation against Davis, as the Court finds that the statement is not defamatory and/or that Davis is immune from suit related to that statement.

Defendant contends in her motion before this court that plaintiff's federal action is barred by res judicata because "[t]he allegations in both cases [state and federal] revolve around threats from Defendant Davis regarding Plaintiff's PLU status, and the ensuing contact from other inmates, allegedly orchestrated by Davis.  Plaintiff has already litigated the same circumstances, and lost on the merits."  ECF No. 33-1 at 4.

In response, plaintiff asserts that the claims pending in this case have "never been adjudicated in any prior action."  ECF No. 39 at 1.  Plaintiff explains that his state action was limited to his defamation claim against defendant Davis (clarifying "wherein it was alleged she defamed plaintiff's character in promulgating statements in a crowded library, i.e. she proclaimed that plaintiff charged large sums of money for his aid"), and did not involve "the fact the defendant threatened to take away plaintiff's PLU [status]" or "deal with any threats of violence or actual injury as this case does."  Id. at 2, 4.  Plaintiff further asserts that "the Lassen County case and this instant [case] were engendered out of two different, separate, and distinct actions taken by defendant, and occurring days apart on two different dates."  Id. at 5.  Plaintiff identifies April 4, 2014 as the date of defendant's alleged defamatory statements challenged in plaintiff's

---

[5] Plaintiff's other alleged state court claim was for "violation of the right to pursue happiness" under the California Constitution, which the superior court found noncognizable in any form.  See ECF No. 33-2 at 14.

1    state court case; April 10, 2014 as the date of "the actual physical fight inside of B-4 Building in

2    which plaintiff was shot with the 40 mm;" and April 12, 2014 as the date he was "accosted by

3    Inmates Lancaster and Ramirez outdoors on the Rec Yard."[6]  Id. at 5, see also id. at 6-10.

4         In her response, defendant again asserts that all of plaintiff's claims "hinge[] on Defendant

5    Davis' alleged threats regarding his PLU status;" "involve dates 'on or about [April 1, 2014];'"

6    and therefore "should and could have been brought in a single action," thus barring plaintiff's

7    federal action by res judicata.  ECF No. 40 at 2.

8         III.     Legal Standards

9              A.  Legal Standards for Dismissal Under Rule 12(b)(6)

10        To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

11   Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as

12   true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

13   (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court must

14   accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425

15   U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v.

16   McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).  Pro se pleadings are held to a

17   less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520

18   (1972).

19        The court may consider facts established by exhibits attached to the complaint.  Durning

20   v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts

21   that may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th

22   Cir. 1987); and matters of public record, including pleadings, orders, and similar papers filed with

23   the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  However,

24   _____

25   [6]  There are some inconsistencies in the latter dates.  The FAC identifies the date of the alleged
     physical altercation and plaintiff's injury as "on or about" April 1, 2014 (rather than April 10,
26   2014); and identifies May 12, 2014 (rather than April 12, 2014) as the date that plaintiff was
     "accosted" by inmates Lancaster and Ramirez who allegedly told him, inter alia, that "you need to
27   lay back off of the lady in the law library."  FAC, ECF No. 14 at 4-5.  These inconsistencies are
     not material to the matters currently before the court.
28

6

1  "[a] motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a

2  motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the

3  motion to dismiss submits materials outside the pleadings in support or opposition to the motion,

4  and if the district court relies on those materials."  Anderson v. Angelone, 86 F.3d 932, 934 (9th

5  Cir. 1996).

6          B.  Legal Standards for Applying Res Judicata

7          The doctrine of res judicata, or claim preclusion, "bars repetitious suits involving the same

8  cause of action once a court of competent jurisdiction has entered a final judgment on the merits."

9  United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) (citation and internal

10  quotation marks omitted).  The date of the initial judgment controls the application of res judicata.

11  Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 761 (9th Cir. 1988).

12          Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, a federal court must accord a

13  state court judgment the same preclusive effect as would be given that judgment under the law of

14  the state in which the judgment was rendered.  See Migra v. Warren City School District Bd. of

15  Educ., 465 U.S. 75, 81 (1984) (state court final judgments are entitled to claim preclusion in

16  federal Section 1983 actions); accord, Allen v. McCurry, 449 U.S. 90, 103-04 (1980) (state court

17  final judgments are entitled to issue preclusion in federal § 1983 actions); Clark v. Yosemite

18  Community College District, 785 F.2d 781, 788 n.9 (9th Cir. 1986) (collecting cases).

19          In California, "the doctrine of res judicata has two aspects.  'First, where the causes of

20  action and the parties are the same, a prior judgment is a complete bar in the second action.  This

21  is fundamental and is everywhere conceded.  [¶] Second, where the causes of action are different

22  but the parties are the same, the doctrine applies so as to render conclusive matters which were

23  decided by the first judgment.'"  Taylor v. Hawkinson, 47 Cal. 2d 893, 895 (1957) (quoting

24  Sutphin v. Speik, 15 Cal. 2d 195, 201 (1940)).

25          The contours of a "cause of action" under California law are determined by application of

26  the "primary rights doctrine."  Under this doctrine a "cause of action" is defined as:  "(1) a

27  primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the

28  defendant, and (3) a harm done by the defendant which consists in a breach of such primary right

7

1   and duty." Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (citations and internal

2   quotation marks omitted).  "Under California law, the claim arises from the harm suffered, as

3   opposed to the particular theory of the litigant.  Even when multiple legal theories for recovery

4   exist, one injury gives rise to only one claim for relief." Eichman v. Fotomat Corp., 759 F.2d

5   1434, 1438 (9th Cir. 1985) (citing Slater v. Blackwood, 15 Cal. 3d 791, 794-95 (1975)).

6          In the related doctrine of collateral estoppel (also known as issue preclusion), "once a

7   court has decided an issue of fact or law necessary to its judgment, that decision may preclude

8   relitigation of the issue in a suit on a different cause of action involving a party to the first case."

9   Allen v. McCurry, supra, 449 U.S. at 94.  "A prior judgment operates as a bar against a second

10  action upon the same cause, but in a later action upon a different claim or cause of action, it

11  operates as an estoppel or conclusive adjudication as to such issues in the second action as were

12  actually litigated and determined in the first action." Taylor, supra, 47 Cal. 2d at 895-96 (quoting

13  Sutphin, 15 Cal. 2d at 202) (further internal citation and quotation marks omitted).

14          IV.    Analysis

15          Although plaintiff's state and federal actions involve the same parties, plaintiff's state

16  court action was limited[7] to his state law defamation claim arising from defendant's alleged

17  conduct on April 4, 2014.  Under California law, defamation is injury to one's reputation.

18  Shively v. Bozanich, 31 Cal. 4th 1230, 1242 (2003) (citing Cal. Civ. Code § 44).  "Defamation

19  'involves the intentional publication of a statement of fact which is false, unprivileged, and has a

20  natural tendency to injure or which causes special damage.'" Price v. Stossel, 620 F.3d 992, 998

21  (9th Cir. 2010) (quoting Gilbert v. Sykes, 147 Cal.App.4th 13, 27 (2007) (internal citation and

22  quotation marks omitted)).

23          Applying a primary rights analysis, plaintiff's state court cause of action asserted the

24  violation of his common law right to be free from defamation when defendant Davis made

25  allegedly false statements to him on April 4, 2014, in the presence of other inmates.  Plaintiff

26  _____

27  [7]  Excluded from this analysis is plaintiff's additional state court claim asserting a violation of his
    right to pursue happiness under the California Constitution, which the superior court found
    noncognizable and plaintiff did not repeat in his federal action.  See n. 5, supra.

28

1   alleged injury to his reputation based on defendant's statements that plaintiff used his PLU status

2   to "drum up business" from other inmates and charge them "large amounts of money."

3   Therefore, res judicata precludes plaintiff relitigating any cause of action – and any necessarily

4   related claim or defense – premised on defendant Davis' alleged defamatory statements to

5   plaintiff on April 4, 2014 and plaintiff's allegedly resulting injury to his reputation.

6        In the present case, plaintiff alleges different factual predicates to support federal claims

7   that were neither pled nor addressed in the state court.[8]  More importantly, plaintiff's state and

8   federal claims allege different injuries as a result of different alleged wrongs and therefore assert

9   different primary rights.  As set forth by the court in Ewing v. Superior Court of California, 90 F.

10  Supp. 3d 1067, 1076 (S.D. Cal. 2015) (citations and internal quotation marks omitted):

11          The same cause of action is implicated if two lawsuits are based on
             the same primary right.  That primary right is the right to be free
12          from a particular injury, regardless of the legal theory on which
             liability for the injury is based. . . . [¶]  The scope of the primary
13          right therefore depends on how the injury is defined. . . . An injury
             is defined in part by reference to the set of facts, or transaction,
14          from which the injury arose.

15       In the instant case, plaintiff alleges that defendant, acting in retaliation against him,

16  actively enlisted the assistance of other inmates to verbally and physically intimidate plaintiff,

17  causing him emotional and physical injury.  These alleged wrongs violated plaintiff's rights to be

18  free from harm by other prisoners,[9] and from conditions of confinement based on the retaliatory

19  ─────────────────────

20  [8]  The court is not persuaded by defendant's assertion that both cases involve defendant's alleged
    threat to take away plaintiff's PLU status.  As construed by this court, defendant's alleged threats
21  are not relevant to either of plaintiff's constitutional claims, see n.2, supra, although they may be
    probative to demonstrate defendant's alleged motivation to retaliate against plaintiff.  Nor were
22  defendant's alleged threats material to plaintiff's defamation claim, which was premised on
    defendant's alleged statements that plaintiff was using the library to "drum up business" and
23  make money.  In his state court case, plaintiff noted defendant's alleged threat to take away his
    PLU status if he did not "shut up and sit down," to explain that he "did as I was told not wanting
24  to risk such loss."  ECF No. 33-2 at 9-10.

25  [9]  Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the
    safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), which includes the
26  responsibility to protect prisoners from injury by other prisoners, Farmer v. Brennan, 511 U.S.
    825, 833-34 (1994).  To prevail on a "failure to protect" claim under the Eighth Amendment,
27  plaintiff must show that the defendant acted with deliberate indifference because he or she knew,

28  (continued…)

9

motive of a prison official.[10]  These rights, grounded in federal constitutional law, are clearly

distinct from plaintiff's right under state tort law to be free of injury to his reputation.  See

Daniels v. Williams, 474 U.S. 327, 333 (1986) (the United States Constitution and traditional tort

law "do not address the same concerns"); see also Paul v. Davis, 424 U.S. 693, 715 (1976)

(available state law remedy for cause of action for defamation irrelevant to determination whether

there is a cause of action under Section 1983) (dicta)).

Moreover, the dates of defendant's challenged conduct are different in plaintiff's state and

federal actions.  Plaintiff's state action challenged defendant's alleged statements to plaintiff on

April 4, 2014.  Plaintiff's federal action alleges that defendant engaged in discussions with other

inmates on undisclosed dates to enlist them to harass, intimidate and/or physically injure plaintiff,

resulting in plaintiff's interactions with those inmates on April 1 (or 10), 2014 and April (or May)

12, 2014.  See n.6, supra.  Plaintiff's federal claims do not arise from or challenge defendant's

statements to plaintiff on April 4, 2014.

For these reasons, this court finds that plaintiff's right to be free from defamation

implicates a different primary right and cause of action than those sought to be vindicated in

plaintiff's federal action on his civil rights claims for retaliation and failure to protect.

This conclusion is consistent with the decision of the Ninth Circuit Court of Appeals in

Brodheim v. Cry, supra, 584 F.3d 1262, which reversed the district court's finding that plaintiff's

federal claims were barred by res judicata.  In his state court action, plaintiff, a state prisoner,

challenged the fairness of a prison policy authorizing the Appeals Coordinator to review inmate

staff complaints against the Coordinator, asserting that this policy effectively deprived plaintiff of

his statutory and regulatory rights to obtain meaningful review of his complaints.  In his federal

---

but disregarded (or worse), an excessive risk to plaintiff's safety or health.  Farmer, 511 U.S. at 834, 837.

[10]  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted).

1    action, plaintiff alleged, in pertinent part, retaliatory conduct by the Appeals Coordinator in the

2    form of issuing a written "warning" to plaintiff in response to an interview request.  The Court of

3    Appeals found that "[t]he two harms here – lack of meaningful review, a procedural harm, and a

4    retaliatory chilling of constitutional substantive rights – are distinct.  They were caused at

5    different times, by different acts, and by different actors.  In the state action, the alleged harm was

6    inflicted by the Warden in 2003, when he allowed Cry [the Appeals Coordinator] to review

7    grievances Brodheim filed against Cry.  In Brodheim's federal complaint, on the other hand, the

8    actual alleged harm was inflicted by Cry himself when he placed the handwritten warning on

9    Brodheim's interview request form in 2001."  Brodheim, 584 F.3d at 1268-69.  The Court of

10   Appeals concluded that "[b]ecause the claims involved different causes of action under the

11   primary rights theory, . . . the federal action was not barred by the state court's decision."  Id. at

12   1269.[11]

13   _____

14   [11]   In contrast, federal prisoner civil rights cases applying res judicata have rested on the court's
     finding that plaintiff sought to vindicate the same primary right both in his state and federal
15   actions.  See, e.g., Lyons v. Traquina, 2010 WL 3069336, at *4-5, 2010 U.S. Dist. LEXIS 78527,
     at *15 (E.D. Cal. Aug. 3, 2010) (Case No. 2:06-cv-2339 RT P) (Section 1983 claim for deliberate
16   indifference to serious medical needs sought to vindicate the same primary right adjudicated in
     plaintiff's state court negligence action which was against the same defendant based on the same
17   medical procedure); accord, Thaut v. Hsieh, 2015 WL 4508779, at *15-16, 2015 U.S. Dist.
     LEXIS 97115, at *39 (E.D. Cal. July 24, 2015) (Case No. 2:15-cv-0590 JAM KJN PS)
18   (plaintiff's state negligence action and federal Eighth Amendment claim asserted the same
     primary right challenging plaintiff's medical care because "based on the exact same factual
19   background and alleged injury"); Davenport v. Campoy, 1991 WL 266388 at *2, 1991 U.S. App.
     LEXIS 30016, at *4-5 (9th Cir. Dec. 12, 1991) (Case No. 91-15171) (plaintiff's mandamus action
20   in state court involved the same primary right to receive adequate medical treatment as his federal
     Section 1983 action for deliberate indifference to his medical needs); see also Furnace v.
21   Giurbino, 2013 WL 6157954, at *5, 2013 U.S. Dist. LEXIS 166648, at *19 (N.D. Cal. Nov. 21,
     2013) (Case No. 12-cv-0873 LHK PR P) (myriad Section 1983 claims sought to vindicate the
22   same primary right plaintiff pursued in state court to remain free from segregated housing,
     involving same incident and same actors); Fargo v. Borg, 1992 WL 188103, at *1, 1992 U.S.
23   App. LEXIS 19096, at *3 (9th Cir. Aug. 6, 1992) (Case No. 91-16497) (plaintiff's federal claims
     challenging temporary deprivation of his legal documents and denial of access to the law library
24   involved the same primary right plaintiff litigated in state court concerning the deprivation of his
     legal documents); Acuna v. Cambra, 1997 WL 577156, at *1, 1997 U.S. App. LEXIS 24705, at
25   *4 (9th Cir. Sep. 12, 1997) (Case No. 96-15398) (plaintiff sought vindication of same primary
     right in both his state and federal actions to keep uncorroborated information out of his prison
26   file, despite alleging different legal theories).

27

28

1    Similarly, in the instant case, plaintiff's state law defamation claim and his federal

2    constitutional claims for retaliation and failure to protect implicate different primary rights and

3    causes of action.  Therefore, plaintiff's instant federal claims are not barred by plaintiff's state

4    court action.

5    Defendant more broadly contends that, because plaintiff *could* have brought all of his

6    claims against her in his state court action, his failure to do so bars his federal action as a matter

7    of res judicata.  See, e.g., Sutphin, supra, 15 Cal. 2d at 202 ("[a] party cannot by negligence or

8    design withhold issues and litigate them in consecutive actions").  This contention is also without

9    merit.

10    There is no question that plaintiff's First and Eighth Amendment claims were not raised in

11    his state court action, although his federal claims had then accrued.[12]  Nevertheless, "despite

12    general statements found in many cases that a prior judgment between the same parties is

13    conclusive not only as to issues actually determined but as to those which might have been

14    determined, it should be emphasized that, where the doctrine of res judicata is applied in its

15    secondary aspect as a collateral estoppel rather than in its primary sense as a merger or bar, *the*

16    *effect of the prior judgment is confined only to those issues in the second action which were*

17    *actually litigated in the first*."  Saunders v. New Capital for Small Businesses, Inc., 231

18    Cal.App.2d 324, 331 (1964) (emphasis added) (collecting cases).  "The doctrine of res judicata

19    has a double aspect.  A former judgment operates as a bar against a second action upon the same

20    cause, but, in a later action upon a different claim or cause of action, it operates as an estoppel or

21    conclusive adjudication as to such issues in the second action *as were actually litigated and*

22    *determined in the first action*."  Todhunter v. Smith, 219 Cal. 690, 695 (1934) (emphasis added)

23    (collecting cases).  Similarly, in Brodheim, the Court of Appeals rejected defendants' argument

24    _____

25    [12]  The incidents allegedly resulting from defendant's challenged conduct took place in April
and/or May 2014, prior to the commencement of plaintiff's state court action in August 2014.
"Although state law determines the length of the limitations period, 'federal law determines when
26    a civil rights claim accrues.'"  Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (quoting
Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000).  "Under federal law, a
27    claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of
the action."  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

28

1   that "any claims that Brodheim could have brought in his state court claim are barred by res

2   judicata." Brodheim, 584 F.3d at 1268 n.2.  The court reasoned that "under California law, not all

3   claims that may have been brought in an earlier case are barred in a later action; rather only those

4   that derive from the same primary right are precluded." Id. (citing Grisham v. Philip Morris

5   U.S.A., Inc., 40 Cal.4th 623, 641 (2007)).

6          These cases demonstrate that res judicata, in the form of collateral estoppel, does not

7   apply to newly alleged factual or legal contentions that were not relevant to the adjudication of

8   the parties' rights in the earlier case, even if the circumstances underlying the new allegations

9   were then known to the parties.  See Henn v. Henn, 26 Cal. 3d 323, 331 (1980) (declining to

10  apply res judicata to bar plaintiff's claim to a community property interest in her ex-spouse's

11  military pension despite failing to adjudicate the matter in the prior dissolution proceedings).

12  Here, there is no fact, claim or defense pertinent to plaintiff's defamation claim that is also

13  pertinent to plaintiff's constitutional claims.  Even if plaintiff's state and federal claims rested on

14  some common facts, "the significant factor" under California's primary rights theory "is the harm

15  suffered; that the same facts are involved in both suits is not conclusive."  Agarwal v. Johnson, 25

16  Cal. 3d 932, 954-55 (1979) (citations omitted), disapproved on another point in White v.

17  Ultramar, Inc., 21 Cal. 4th 563, 574 n.4 (1999).  This is not a case where plaintiff has asserted

18  different legal theories or requests for relief based on the same primary right asserted in his state

19  court action.  Cf., Slater, supra, 15 Cal. 3d at 795.  Nor is this a situation where different primary

20  rights were allegedly violated by the same wrongful conduct.  Cf., Branson v. Sun-Diamond

21  Growers, 24 Cal. App. 4th 327, 342 (1994).  Judgment on plaintiff's federal claims will not

22  nullify or otherwise impact the state court's determinations and judgment.  Cf., Manufactured

23  Home Cmtys., Inc. v. City of San Jose, 420 F.3d 1022, 1031-32 (9th Cir. 2005) (plaintiff's state

24  and federal court claims involved "a single primary right").

25         For these several reasons, this court finds that the instant action involves different primary

26  rights and different causes of action than addressed by plaintiff in his state court action.

27  Therefore, the court finds that plaintiff's instant constitutional claims are not precluded by res

28  judicata, either as a complete bar or in the form of collateral estoppel.  Accordingly, defendant's

1     motion to dismiss this action should be denied.

2          V.     Claims for Injunctive Relief

3          Defendant contends that plaintiff's claims for injunctive relief – specifically, his requests

4     to maintain access to HDSP's law library, and to be free from intimidation and physical injury by

5     other inmates[13] – were mooted by plaintiff's transfer from HDSP in July 2015.  Review of the

6     court's docket indicates that plaintiff was initially transferred from HDSP to California State

7     Prison-Sacramento (CSP-SAC) in July 2015.  See ECF No. 38.  Plaintiff was then transferred

8     from CSP-SAC to California State Prison Los Angeles County (CSP-LAC) in September 2015.

9     See ECF No. 43.

10          Plaintiff filed his opposition to defendant's motion while he was incarcerated at CSP-

11     SAC.  He then asserted that his claim for injunctive relief "is not moot due to plaintiff's being

12     transferred as Sergeant Kile, and C/O Kirkland from HDSP are now at CSP-SAC and still having

13     ties to officers at HDSP . . . [r]etaliating against plaintiff."  ECF No. 39-1 at 2.

14          As a general rule, prisoners who have been transferred to a different prison may not sue

15     for injunctive relief based on conditions of confinement at the prison from which they were

16     transferred because their challenges are mooted upon their transfer.  See, e.g., Dilley v. Gunn, 64

17     F.3d 1365, 1368 (9th Cir. 1995), and cases cited therein.  An exception may be found if a claim is

18     "capable of repetition, yet evading review," defined generally as "limited to extraordinary cases

19     in which (1) the duration of the challenged action is too short to be fully litigated before it ceases,

20     and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action

21     again."  C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 983 (9th Cir. 2011)

22     (citations and internal quotation marks and punctuation omitted), cert. denied, 132 S. Ct. 1566

23     (2012).

24          Plaintiff's allegations meet neither of these preconditions for applying an exception to the

25     mootness doctrine.  Plaintiff's allegations do not explain how the transfer of prison officials Kile

26

27     [13]  See supra, at p. 2 (recounting a portion of the court's screening order pursuant to 28 U.S.C.
       §1915A, set forth in ECF No. 17 at 3).

28

14

1    and Kirkland from HDSP to CSP-SAC perpetuated defendant Davis' alleged retaliation against

2    plaintiff which, according to the FAC, was implemented only by HDSP inmates.  Absent such

3    linkage, any newly alleged retaliatory conduct by Kile and Kirkland would give rise new claims

4    that must be separately grieved.  Indeed, plaintiff's allegations appear to support potentially new

5    and independent claims against Kile and Kirkland, see e.g. Pl. Supp. Stmt., ECF No. 41 at 2-3, et

6    seq. (alleging retaliatory conduct by these officials "only after I reported and complained about

7    Kirkland's and Kile's reproaching me"), apparently so perceived by plaintiff who sought

8    appropriately to separately grieve these matters at CSP-SAC, see id. at 10-25.  Thus, these matters

9    appear to have no significant relationship to defendant Davis' alleged conduct challenged in this

10   action.  More importantly, plaintiff was transferred from CSP-SAC within two months and

11   remains incarcerated elsewhere.

12        For these reasons, the court finds that plaintiff's requests for injunctive relief in this action

13   were mooted by plaintiff's transfer from HDSP in July 2015, and hence away from the physical

14   presence of defendant Davis and the inmates with whom she allegedly cooperated.

15        Accordingly, this action should proceed only on plaintiff's pursuit of damages.

16        VI.    Motion for Appointment of Counsel

17        While incarcerated at CSP-SAC, plaintiff submitted a request for appointment of counsel.

18   Plaintiff states that he is indigent, has only a tenth grade education, and has no legal training.

19   Plaintiff avers that he has limited access to legal materials because the CSP-SAC library is small

20   and the library provides services to more than 1000 prisoners.  Plaintiff asserts that this action is

21   meritorious and presents complex legal issues that would be more effectively addressed by legal

22   counsel, who could also more competently and efficiently conduct discovery and develop crucial

23   facts.

24        The United States Supreme Court has ruled that district courts lack authority to require

25   counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490

26   U.S. 296, 298 (1989).  In certain exceptional circumstances, the district court may request the

27   voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

28   1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

1   The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of

2   success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the

3   complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th

4   Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances common to

5   most prisoners, such as lack of legal education and limited law library access, do not establish

6   exceptional circumstances that would warrant a request for voluntary assistance of counsel.  The

7   burden of demonstrating exceptional circumstances is on the plaintiff.  Palmer v. Valdez, 560

8   F.3d 965, 970 (9th Cir. 2009).

9        In the present case, the court finds that plaintiff has not met his burden of demonstrating

10   exceptional circumstances supporting the appointment of counsel.  The grounds asserted –

11   indigence, limited general education, no formal legal training and limited access to the law library

12   – are factors shared by most prisoners.  Moreover, plaintiff's pleading and briefing to date

13   demonstrate that he is capable of articulating his claims pro se; plaintiff has also informed the

14   court that he assists other inmates in the preparation of their legal filings.  Finally, this case is not

15   sufficiently developed to conclude that plaintiff is likely to succeed on the merits.

16        For these reasons, plaintiff's motion for appointment of counsel will be denied without

17   prejudice.

18        VII.   Conclusion

19        For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion for

20   appointment of counsel, ECF No. 42, is denied without prejudice.

21        Further, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss, ECF No.

22   33, be granted in part and denied in part, as follows:

23        1.  Defendant's motion to dismiss this action based on principles of res judicata should be

24   denied.

25        2.  Defendant's motion to dismiss plaintiff's claims for injunctive relief should be granted.

26        3.  This action should proceed on plaintiff's pursuit of damages premised on his First and

27   Eighth Amendment claims against defendant Davis.

28        These findings and recommendations are submitted to the United States District Judge

1  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2  after being served with these findings and recommendations, any party may file written

3  objections with the court and serve a copy on all parties.  Such a document should be captioned

4  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

5  failure to file objections within the specified time may waive the right to appeal the District

6  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7  DATED: January 27, 2016

8

ALLISON CLAIRE
9  UNITED STATES MAGISTRATE JUDGE

17