UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ALLEN HAMMLER, | No. 2:14-cv-2073 MCE AC P |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| C. DAVIS, | |
| Defendant. | |

I.   Introduction

Plaintiff is a state prisoner currently incarcerated at Salinas Valley State Prison under the authority of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's First Amended Complaint (FAC) against defendant C. Davis, a librarian at High Desert State Prison (HDSP) when plaintiff was incarcerated there, on First and Eighth Amendment claims that defendant, acting in retaliation, was deliberately indifferent to plaintiff's safety.  See ECF No. 14.  Presently pending is defendant's motion for summary judgment based on plaintiff's alleged failure to exhaust his administrative remedies.  See ECF No. 58

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, this court recommends

that defendant's motion for summary judgment be denied.

## II. Background

Upon screening pursuant to 28 U.S.C. §1915A, this court found that the FAC states a First Amendment claim for retaliation, and an Eighth Amendment claim for deliberate indifference/failure to protect. The claims are based on defendant Davis's alleged enlisting of other inmates to intimidate and/or harm plaintiff, in response to his efforts to access the HDSP law library and provide legal assistance to other inmates. See ECF No. 17 at 3. By order filed March 4, 2016, this court granted defendant's motion to dismiss as to plaintiff's claims for injunctive relief, and clarified that this action proceeds only on plaintiff's claims for damages. See ECF Nos. 47, 45.

Following this court's resolution of defendant's motion to dismiss, the court issued a Discovery and Scheduling Order. ECF No. 48. Simultaneously, defendant filed the pending motion for summary judgment. ECF No. 49. Plaintiff filed an opposition to the motion and a response to defendant's statement of undisputed facts. See ECF Nos. 51, 52. Defendant filed a reply. ECF No. 53. The court thereafter vacated all deadlines pending resolution of the pending motion. ECF No. 56.

## III. Legal Standards

### A. Legal Standards for Exhausting Administrative Remedies

A prisoner's failure to exhaust available administrative remedies is an affirmative defense that generally must be raised by defendants and proven on a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204 (2007). When grieving their appeal, prisoners must adhere to CDCR's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones, 549 at 218. Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains

2

available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

Following this court's decision on defendants' motion to dismiss, the United States Supreme Court provided additional guidance in assessing whether a prisoner has exhausted all available administrative remedies before commencing an action in federal court. The Supreme Court emphasized that "[t]he Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross, 136 S. Ct. at 1862. Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. at 1859 (quoting Booth, 532 U.S. at 738).

The Supreme Court further clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. These circumstances are as follows: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[s] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Id. at 1856-57.

////

B. <u>Legal Standards for Summary Judgment</u>

The Ninth Circuit has laid out the analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies. As set forth in <u>Albino</u>, 747 F.3d at 1172 (citation and internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." <u>Oracle Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u>

1  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

2  nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

3  circumstance, summary judgment should be granted, "so long as whatever is before the district

4  court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

      If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[1]

      The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

      In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

---

[1] Moreover, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's complaint or opposition.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment).

1    Matsushita, 475 U.S. at 587 (citations omitted).

2      In evaluating the evidence to determine whether there is a genuine issue of fact," the court

3    draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

4    Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

5    It is the opposing party's obligation to produce a factual predicate from which the inference may

6    be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

7    aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing

8    party "must do more than simply show that there is some metaphysical doubt as to the material

9    facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the

10   nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

11   omitted).

12     In applying these rules, district courts must "construe liberally motion papers and

13   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

14   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly

15   support an assertion of fact or fails to properly address another party's assertion of fact, as

16   required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

17   . . . ." Fed. R. Civ. P. 56(e)(2).

18     If a court concludes that a prisoner failed to exhaust his available administrative remedies,

19   the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera,

20   427 F.3d 1164, 1175-76 (9th Cir. 2005).

21     IV. Undisputed Facts

22     Unless otherwise noted, the following facts are undisputed by the parties. See

23   Defendants' Statement of Undisputed Facts (DUF), ECF No. 49-2, supporting declarations and

24   exhibits; plaintiff's response thereto, ECF No. 52; and plaintiff's verified FAC, ECF No. 14.

25     • At all times relevant to this action, plaintiff Allen Hammler was a state inmate

26   incarcerated at High Desert State Prison (HDSP) in Susanville, California.

27     • Plaintiff alleges that sole defendant C. Davis, HDSP librarian, threatened to take away

28   his Priority Legal User (PLU) status, and solicited inmates to intimidate and physically harm

plaintiff, in retaliation for his legal assistance to other inmates. Plaintiff alleges that this conduct took place from April 2014 to May 2014.

- Plaintiff filed his initial complaint in this action on September 8, 2014, ECF No. 1; he filed the operative FAC on January 26, 2015, ECF No. 14.

- HDSP has an administrative appeals process for inmate grievances which contains three levels of review. An inmate must process his grievance through the third level of review in order to exhaust his available administrative remedies. See Declaration of R. Dreith, HDSP Appeals Coordinator (Dreith Decl.), ECF No. 49-4 at ¶¶ 1-3; see also Declaration of M. Voong, Chief, CDCR Office of Appeals (Voong Decl.), ECF No. 49-3 at ¶¶ 1-6.

- During the period from April 2014 through January 2015 (encompassing the period from commencement of defendant's alleged misconduct through the filing of plaintiff's FAC), five of plaintiff's grievances were accepted and processed by the HDSP Appeals Coordinator: **Log No. HDSP-B-14-01429, Log No. HDSP-B-14-02247, Log No. HDSP-B-14-03105, Log No. HDSP-B-14-03482, and Log No. HDSP-B-15-00124**. See Dreith Decl., ¶ 9.

- Only one of these five grievances, **Log No. HDSP-B-14-02247**, identifies defendant Davis by name. Neither this appeal nor any of the other four identified appeals (only one of which was fully exhausted) are relevant to the matters challenged in this action.[2] See Plaintiff's

---

[2] In **Log No. HDSP-B-14-01429**, submitted May 5, 2014, plaintiff complained that Officer Haas slandered him and called him a snitch in front of other inmates. This appeal does not identify defendant Davis. The appeal was partially granted on Second Level Review on June 26, 2014. Dreith Decl. Ex. B. It was denied on Third Level Review on December 23, 2014. Voong Decl. Ex. B. Only this appeal, of the five identified appeals, was exhausted through Third Level Review within the relevant time period. Voong Decl., ¶ 8.

In **Log No. HDSP-B-14-02247**, submitted July 23, 2014, plaintiff requested copies of court documents for his pending cases. This appeal identifies Defendant Davis but does not address concerns of deliberate indifference, fights, or threats from other inmates. The appeal was partially granted at Second Level Review. Dreith Decl., Ex. C. It was not submitted for Third Level Review. Voong Decl., Ex. A.

In **Log No. HDSP-B-14-03105**, submitted October 11, 2014, plaintiff claimed that he was placed in fear of great bodily injury when the tower gunner pointed a weapon at him. This appeal does not identify defendant Davis, or make claims of deliberate indifference, retaliation or threats from other inmates. The appeal was partially granted at First Level Review but was not resubmitted for further review. Dreith Decl., Ex. D.

In **Log No. HDSP-B-14-03482,** submitted November 9, 2014, plaintiff claimed that he was denied his quarterly package of corn pops by an unidentified officer. This appeal does not

Reply to DUF, ECF No. 52 at 3, ¶¶ 13-9.  Thus, during the relevant period none of plaintiff's processed appeals concerned the allegations against defendant Davis that are pursued in this federal action, nor any related claims of inmate threats, retaliation or deliberate indifference.  See id., ¶ 21, and DUF ¶ 21.

Although plaintiff does not dispute the above facts, he contends that HDSP's administrative remedies were nonetheless effectively unavailable to him as a means for challenging defendant Davis' misconduct, based on the allegations and evidence described below.

V. Plaintiff's Allegations and Evidence[3]

- Plaintiff alleges that he submitted an appeal challenging the conduct of defendant Davis, which went "missing"[4] and therefore was never assigned a log number.  Plaintiff avers that he submitted the initial appeal on April 10 or 17, 2014.[5]  Plaintiff has produced a copy of the completed appeal form, bearing the date April 17, 2014, which later became an attachment to

---

identify defendant Davis or assert claims of deliberate indifference, retaliation, or threats from other inmates.  The appeal was partially granted at the Second Level of Review but was not further pursued.  Dreith Decl., Ex. E.

In **Log No. HDSP-B-15-00124**, submitted January 8, 2015, plaintiff challenged a time bar to his attempted challenge to a Rules Violation Report.  This appeal does not identify defendant Davis nor make related claims of deliberate indifference, retaliation, or threats from other inmates.  The appeal bypassed First Level Review but was denied at Second Level of Review on January 16, 2015.  Dreith Decl., Ex. F.

[3] Although petitioners' opposition to summary judgment is not verified, his signed recitation of facts within the scope of his personal knowledge will be accepted as an affidavit or proffer of testimony.  See See Fraser, 342 F.3d at 1036; Lopez, 203 F.3d 1122, 1132 n.14.  Accordingly, plaintiff's allegations of fact are treated here as evidence.

[4] In support of his contention that HDSP officials have a pattern of ignoring prisoner grievances, plaintiff asserts that another of his appeals, submitted February 7, 2014, which alleged that the tower gunner pointed a weapon at plaintiff without cause, also went "missing."  ECF No. 51 at 6.  Plaintiff asserts that on February 17, 2014, he submitted a CDCR 22 inquiring into the status of the appeal.  Id. at 6, 16 (Ex. A).  Plaintiff allegedly renewed these allegations in his appeal submitted October 11, 2014, challenging the gunner's conduct on September 15, 2014 (Log No. HDSP-B-14-03105).  This appeal was partially granted at First Level Review on November 8, 2014, and plaintiff did not submit it for further review.  See Dreith Decl., Ex. D.

[5] Plaintiff states initially that the appeal was dated April 10 (ECF No. 51 at 6), but his referenced exhibit (ECF No. 51 at 27-28) and later arguments use the date April 17.  It is unclear whether the initial reference to April 10 was an error, or whether plaintiff means that he first submitted the appeal on April 10 and then rewrote it and dated the duplicate version on April 17.  This discrepancy in dates does not affect the analysis.

another document in a different appeal. ECF No. 51 at 6.[6]

- On May 2, 2014, having received no response to the appeal, plaintiff raised the matter in person with Lt. Calhoun at a Rules Violation Report (RVR) hearing concerning an inmate fight instigated by defendant. Id. at 6-7. Lt. Calhoun told plaintiff to submit a new appeal to Correctional Officer (C/O) Snyder, who served as the staff assistant at the RVR hearing, and directed C/O Snyder to accept it. Id. at 7. Plaintiff alleges that he handed the appeal to C/O Snyder on May 2, 2014, who memorialized his receipt by signing the envelope. Id. at 7, 18 (Ex. B, bearing Snyder's putative signature and providing "602 recieved [sic] on 5/2/14 by inmate Hammler dated 4/17/14.").[7]

- Plaintiff avers that 30 days after handing his appeal to C/O Snyder on May 2, 2014, he questioned Snyder who told him that "Calhoun himself took possession of the 602" and "take it up with Calhoun." ECF No. 51 at 7.

- Meanwhile, on May 15, 2014, plaintiff submitted another CDCR 22 inquiring into the status of "two 602 Appeals . . . one dated 4/17/14 and another dated 5/5/2014." ECF No. 51 at 7, 20 (Ex. C.) On May 21, 2014, plaintiff received the following response: "The IAO [Inmate Appeals Office] has received [sic] one appeal from you in 2014 please see attached screen out." Id. Plaintiff avers, "[h]owever, there was no screen out attached." Id. at 7.

- On May 31, 2014, plaintiff attempted to submit **Log No. HDSP-B-14-01706** (see n.6, supra) which was screened out/rejected at First Level Review on June 4, 2014. ECF No. 51 at 7-8, 21-36 (Ex. D); see also Dreith Decl., ¶ 9, Ex. H. This appeal recounts plaintiff's assertions that on May 2, 2014, Lt. Calhoun directed plaintiff to submit his appeal challenging the conduct of defendant Davis to C/O Snyder, which plaintiff did, obtaining a verification signature from C/O

---

[6] The only record copy of this appeal is attached to plaintiff's challenge to the First Level rejection of his **Appeal Log No. HDSP-B-14-01706**, in which plaintiff recounted his efforts to exhaust his claims against defendant Davis and requested that he "be allowed to submit a new 602 Appeal in re. the issues upon which the missing CDCR 602 raised and would like to have a CC2 personally collect it from me." See ECF No. 51 at 27-36; see also id. at 23 (plaintiff notes submission of the "missing 602"). The record does not reflect that this June 30, 2014 challenge to the June 4, 2014 rejection of this appeal was ever received or reviewed by appeals staff.

[7] See n. 5, supra.

9

Snyder; but "again it has gone missing." See ECF No. 51 at 23, 25. Plaintiff attached a copy of his May 15, 2014 CDCR 22. See id. at 23, 26. He also noted that "[t]his issue was documented with the U.S. Dist Court 3rd Dist [sic] in re Case No. C076414, filed 5/7/2014 and is now reflected in the court's computer and records.[8] Please check." Id. at 25. Plaintiff asked that he be "allowed to submit a new 602 Appeal in re. the issues upon which the missing CDCR 602 raised and would like to have a CC2 [Correctional Counselor II] personally collect it from me." Id. at 23.

- The June 4, 2014 informal screen-out form (Form 695), completed by CC II L. Lopez, for **Log No. HDSP-B-14-01706,** indicates that "supporting documents were not attached," and directed plaintiff to submit a CDCR 22, with the following handwritten instructions, ECF No. 51 at 22:

> Hammler, To date the IAO has received (2) appeals from you. Submit a Form-22 to Officer Snyder for a written response to this issue. If dissatisfied forward to Lt. Calhoun for a Supervisor's written response to this issue. Attach written responses to your appeal.

The formal screen-out notification (also denominated a Form 695 and dated June 4, 2014), similarly provides in pertinent part, see Dreith Decl., Exh. H:

> . . . . Your appeal is missing: 6/4/14 – Submit a Form-22 to staff. Retain a copy of the Form 22 that contains a staff signature accepting the Form 22. If you do not receive a reply within 20 days of submitting the Form 22 to the appropriate person/entity re-submit this appeal for review/processing. Hammler, To date the Inmate Appeals Office has received two (2) appeals from you. Submit a Form-22 to Officer Snyder for a written response to this issue. If dissatisfied, forward to Lt. Calhoun for a supervisor's written response to this issue. Attach written responses to your appeal.

---

[8] This court's review of the docket of the California Court of Appeal, Third Appellate District, indicates that Case No. C076414, denominated "In re Allen Hammler on Habeas Corpus," was filed on May 7, 2014. The petition was denied on May 15, 2014 due to plaintiff's failure to exhaust his administrative remedies. The substance of the petition is not available. The undersigned notes that plaintiff has filed at least four habeas corpus petitions in the California Supreme Court. See United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (the court may take judicial notice of its own records and the records of other courts); see also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

10

1      • Plaintiff contends that he appealed this decision to the Second Level, and has submitted
2  a copy of **Log No. HDSP-B-14-01706** that includes the following explanation of his
3  dissatisfaction with the First Level Response:

> It can factually be shown that Appellant submitted a 602 Appeal prior to this one and gave it to Officer Snyder who has asserted that he was ordered to convey[] it to Lt. M. Calhoun.  The Appeal has gone missing.  Therefore Appellant requests to be allowed to resubmit the issue anew and it be processed with Special, Special Care, and Appellant be contacted in person by a CC2 in re. the matter forthwith.

ECF No. 51 at 24.  As earlier noted, plaintiff's exhibit includes a putative copy of the operative "missing 602" dated April 17, 2014. Id. at 27-36.  However, there is no record evidence that plaintiff's challenge to the screen out of **Log No. HDSP-B-14-01706** was received or processed by appeals staff.

   • Meanwhile, plaintiff states that he sought to adhere to the June 4, 2014 Form 695 instructions and "again attempt to have C/O Snyder sign a CDCR 22 Form, but was told again to 'take it up with Calhoun,' an action that prevented Plaintiff from following the AC's instruction, i.e., Snyder's refusal to sign a 22." ECF No. 51 at 8.  Thereafter, plaintiff "again attempted to do as he'd been instructed and on 7/8/2014 forwarded a 22 Form to Lt. Calhoun." Id.  On July 15, 2014, Lt. Calhoun responded as follows, id. at 38 (Ex. E):

> I did not order you to give your appeal to me personally.  You were instructed to hand your appeal to Officer Snyder and he would ensure it was routed to the proper recipient, which he did as evidenced by the 602 being returned to you.  I have no control over the appeal once it is submitted to the Appeals Office.

   • Plaintiff avers that "the 602 Calhoun in the 22 Form alludes to (**Log No. HDSP-B-14-01706**) is not the one that was given to Snyder, but was the 3rd 602 submitted in re. the 602 given to Snyder having gone missing." ECF No. 51 at 10.

   • Plaintiff states that he "went further and attempted to exhaust via filing habeas corpus in Cal. State Superior Court, Co. of Lassen, Case No. CHW3267, on 8/28/2014 where he raised issue of being denied access to Appeal Process due to his 602(s) going missing." ECF No. 51 at 10.  Plaintiff has submitted an endorsed copy of his petition, which appears to set forth, inter alia, plaintiff's allegations against defendant Davis.  See id. at 39-95 (Ex. F).  The petition sought,

11

inter alia, an "injunction" providing plaintiff with safe conditions of confinement without threats from other inmates and staff at the behest of defendant Davis, and the right to access the courts without interference from defendant Davis.[9] Review of the docket of the Lassen County Superior Court indicates that this petition was denied on October 24, 2014. See Fed. R. Evid. 201; n.3, supra.

- On August 29, 2014, plaintiff commenced the instant action.[10]
- Plaintiff requests that the court take judicial notice of his Exhibit G, entitled "2015 Special Review: High Desert State Prison, Susanville CA," published December 2015 by the California Office of the Inspector General (OIG). See ECF No. 51 at 96-164. Plaintiff's request is granted for purposes of the present motion.[11] Plaintiff directs the court's attention to the OIG findings that HDSP's remote location and extensive hiring of local community members has led to the "existence of tight-knit social groups among employees, commonly referred to as 'cars' within the correctional community," who abide by "a code of silence" in refusing to disclose misconduct by one another. Id. at 109-11. A peer review study undertaken in April 2015 found multiple areas of non-compliance with CDCR policies and procedures, including the following:

> Multiple infractions related to the processing of inmate appeals, including appeals being screened out at a high rate; failure to follow the inmate appeal collections process outlined in policy; by routing appeals to the mailroom instead of the Appeals Office; several overdue inmate appeal modification orders; and failure of the appeals coordinator to meet with the IAC on a quarterly basis, as required.

ECF No. 51 at 112 (Review at p. 10).

---

[9] The petition includes the additional allegation that on July 2, 2014, plaintiff attempted to forward a CDCR 22 and copy of the missing 602 to Lt. Calhoun but was stopped by C/O Hernandez who told him "I'm not signing that . . . because you can't send that to him [Calhoun]". ECF No. 51 at 44.

[10] This filing date is determined according to the prison mailbox rule, under which a document is deemed served or filed on the date the prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

[11] See Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n. 2 (9th Cir.2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

1  The report also stated as follows:

2  > The OIG reviewed dozens of complaints, filed by both inmates and staff, related to the processing of inmate appeals. Some of the allegations included:
3
4  > - Appeals were being destroyed or discarded, never being delivered to the Appeals Office.
5
6  > - Appeals were being read by officers, and if the appeal contained a complaint against staff, the inmate was subjected to retaliation or the appeal was destroyed.
7
8  > - Staff complaints were never addressed.
9  > - Appeals were being shredded by the Appeal Office staff.

10  ECF No. 51 at 129 (Review at p. 27).

11  The OIG noted that HDSP had failed to implement directives issued in 2011 that were

12  intended to increase the security of inmate appeals and assure accountability for their proper

13  handling. Id.

14  Plaintiff contends that OIG's findings substantiate his allegations that HDSP's

15  administrative grievance process was effectively unavailable to him to exhaust his claims against

16  defendant Davis, "at the exact time he was attempting to use it and in the exact manner asserted."

17  See ECF No. 51 at 8-11 (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).

18      VI.    Rebuttal Evidence

19  Defendant has presented no responsive evidence to rebut plaintiff's allegations and

20  evidence regarding his submission of an appeal on or about April 17, 2014, that challenged

21  Davis's conduct. Defendant relies entirely on the fact that no such appeal was processed by the

22  Appeals Coordinator, and thereafter exhausted through the Third Level. See ECF No. 53.

23      VII.    Discussion

24  Defendant has satisfied her initial burden of establishing that the institution provided an

25  administrative remedy, which plaintiff did not exhaust as to his allegations against her. See

26  Albino, 747 F.3d at 1172. It therefore becomes plaintiff's burden "to come forward with

27  evidence showing that there is something in his particular case that made the existing and

28  generally available administrative remedies effectively unavailable to him." Id.; see also Ross,

1 | 136 S. Ct. at 18558-60.

Plaintiff has met this burden of production by presenting evidence that he wrote and submitted an appeal on April 10 and/or 17, 2014, alleging that Davis had sent other inmates to intimidate plaintiff and had done so in retaliation for his efforts as a "jailhouse lawyer"; that this appeal was never logged or processed; that plaintiff made numerous subsequent efforts to bring the "missing" appeal to the attention of prison authorities and obtain review of his complaints against Davis; and that these efforts were unsuccessful due to the actions of prison officials, including improper use of the "screen out" process. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (improper screen-outs render exhaustion process unavailable).[12] The mishandling of an inmate appeal by prison officials, including the failure to process it through available channels or causing it to "disappear," undeniably constitutes "machination" that "thwart[s] inmates from taking advantage of a grievance process." Ross, 136 S. Ct. at 1860. Such conduct therefore renders an administrative remedy incapable of providing relief. Id.

Defendant has failed to produce any evidence conclusively rebutting – or demonstrating a factual dispute regarding – plaintiff's contentions or the credibility of his evidence. Most significantly, defendant has not submitted declarations from C/O Snyder or Lt. Calhoun regarding the events at issue. This failure is fatal to the motion for summary judgment, because the burden to establish non-exhaustion remains defendant's. Albino, 747 F.3d at 1172. Accordingly, defendant's failure to negate or contest plaintiff's showing defeats her motion under Albino and Rule 56.

Defendant suggests that if the court "elects" not to grant her motion for summary judgment, it should "hold a hearing to resolve any questions of material fact regarding exhaustion." ECF No. 53 at 1. An evidentiary hearing is required where material facts are disputed. See Albino, 747 F.3d at 1166 ("If material facts [regarding exhaustion] are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts.") In this Rule 56 context, "disputed" means disputed *by evidence* and not just

---

[12] Plaintiff's state court habeas petition regarding this matter, while it illustrates his desire for vindication, is not relevant to the availability of the administrative exhaustion process.

rhetorically contested. Without evidence demonstrating the existence of a factual dispute, there is no need for a hearing. Defendant has presented no such evidence.

If exhaustion were an element of plaintiff's claim rather than an affirmative defense, plaintiff might well have to "prove up" his allegations by submitting his evidence to adversary testing and credibility challenges at a pretrial hearing. But plaintiff does not bear the burden of proof as to exhaustion, even when he has assumed and satisfied the burden of production as to the practical unavailability of administrative remedies. Albino, 747 F.3d at 1172. An evidentiary hearing is only necessary where summary judgment is denied on grounds that material factual disputes preclude the entry of summary judgment. In such a case, the disputed facts must be determined by the court in order for the exhaustion issue to be decided. Here, in contrast, summary judgment for defendant is precluded not because the evidence is conflicting, but because defendant has failed to present evidence that conflicts with plaintiff's evidence of a thwarted attempt to submit and exhaust an April 2014 appeal. Accordingly, there are no factual disputes before the court that require resolution. The moving party's failure to contest plaintiff's showing with conflicting evidence results in the court treating plaintiff's facts as undisputed. Fed. R. Civ. P. 56(e)(2). Under these circumstances, an evidentiary hearing is not warranted.

Albino itself, the case in which the Ninth Circuit adopted the governing framework for litigation of administrative exhaustion in prisoner cases, involved a similar situation. As the en banc court explained, the plaintiff had opposed defendant's motion for summary judgment with specific evidence that the jail's administrative remedies were unavailable to him; this evidence was not contradicted by any evidence from defendants, who relied on evidence of the formal existence of a complaint process. Albino, 747 F.3d at 1175-76. Because administrative exhaustion is an affirmative defense, and because the evidence presented on summary judgment must be viewed in the light most favorable to the non-moving party, this state of the record compelled the conclusion that defendants had failed to meet their burden on the exhaustion issue. Id. at 1176.[13] The same is true here.

---

[13] In Albino, defendants' evidence failed to meet their initial burden of establishing that the jail's process for inmate complaints was generally available. Id. Here, defendant's evidence fails to

The <u>Albino</u> court did not merely reverse the district court's grant of summary judgment to the defendants, it held that summary judgment should be entered *sua sponte* for plaintiff:

> If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion, it may be appropriate for the district court to grant summary judgment *sua sponte* for the nonmovant on this issue. . . . Before *sua sponte* summary judgment against a party is proper, that party "must be given reasonable notice that the sufficiency of his or her claim will be in issue: Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." <u>Buckingham v. United States</u>, 998 F.2d 735, 742 (9th Cir. 1993) (citation and internal quotation marks omitted). Similarly, in <u>Kassbaum v. Steppenwolf Productions, Inc.</u>, 236 F.3d 487 (9th Cir. 2000), we noted that "if a court concludes that a non-moving party is entitled to judgment, 'great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'" <u>Id.</u> at 494 (quoting <u>Ramsey v. Coughlin</u>, 94 F.3d 71, 74 (2d Cir. 1996)).
>
> We conclude that the concerns expressed in <u>Buckingham</u> and <u>Kassbaum</u> have been satisfied in a case such as this one, where, after having had a full opportunity to gather evidence, a defendant moves for summary judgment based on a failure to exhaust under the PLRA. As the movants for summary judgment in this case, defendants were on notice of the need to come forward with all their evidence in support of this motion, and they had every incentive to do so. Defendants had ample opportunity to conduct discovery and to provide evidence to carry their burden of proof that administrative remedies were available. There is nothing in the record to suggest that defendants' discovery with respect to exhaustion was curtailed in any way. Indeed, most of the relevant evidence was within their knowledge and control. In other words, defendants "had a full and fair opportunity to ventilate the issues involved." <u>Cool Fuel, Inc. [v. Connett]</u>, 685 F.2d [309,] 312 [(9th Cir. 1982)].

<u>Id.</u> at 1176-77.

In the case at bar, defendant has also had a full and fair opportunity to develop and present evidence on the exhaustion issue. Defendant, as the party moving for summary judgment, was "on notice of the need to come forward with all [her] evidence in support of this motion, and. . . had every incentive to do so." <u>See id.</u> at 1177. Defendant filed a reply to plaintiff's opposition to

---

meet her ultimate burden that the process was available to plaintiff and not thwarted as to a particular appeal. This distinction makes no difference to the Rule 56 analysis.

the motion, and was not prevented from submitting rebuttal evidence. Indeed, any evidence that might have disputed plaintiff's showing was within the exclusive knowledge and control of CDCR actors. Defendant has nonetheless failed to either establish non-exhaustion as a matter of law or demonstrate the existence of a triable issue regarding exhaustion. Accordingly, summary judgment should be entered for plaintiff on this issue. Because this case has been pending for almost two and a half years without proceeding past the most preliminary stage, any effort by defendant to belatedly supplement the summary judgment record with additional evidence should be rejected.

The undersigned has made no credibility determinations or factual findings regarding exhaustion or the alleged thwarting of plaintiff's administrative appeal by prison officials. For the reasons explained above, however, both Albino and Rule 56 require that defendant's motion be denied. Moreover, the exhaustion issue should be resolved in plaintiff's favor based on the failure of defendant to meet her burden on the issue.

VII.   Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 49, be denied and that summary judgment on the issue of exhaustion be entered for plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 22, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE